UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     v.<br><br>RONALD PHILLIPS,<br><br>            Defendant. | Case No. CR21-030-JLR<br><br>DETENTION ORDER |

This matter came before the undersigned for a detention hearing on February 11, 2025.

## I.     BACKGROUND

On November 14, 2016, Defendant Ronald Phillips was convicted in the Eastern District of Washington for possessing a firearm as a felon and sentenced to five years in prison, followed by a three-year term of supervised release. (Dkt. ## 2, 2-1.) On February 16, 2021, after his release from prison, this Court accepted jurisdiction of his supervised release. (Dkt. # 1.)

Mr. Phillips subsequently violated the terms of his supervised release, leading the Court to issue a warrant for his arrest on June 9, 2021. (Dkt. # 3.) He evaded law enforcement for more than two years before being arrested and detained on August 10, 2023, at which point he admitted to four violations. (Dkt. ## 13, 19-20.) On September 13, 2023, the Court revoked Mr. Phillips' supervised release, sentenced him to 90 days in custody (with credit for time served),

DETENTION ORDER - 1

and imposed a new 24-month term of supervised release, requiring him to reside in a residential reentry center ("RRC") upon release. (Dkt. # 20.)

Mr. Phillips did not report to the RRC as ordered. Hence, two weeks after the revocation hearing, Probation and Pretrial Services filed a Petition for Warrant (dkt. ## 21-23), alleging Mr. Phillips violated the terms and conditions of his supervision by (1) failing to participate in the RRC and (2) failing to notify probation of a change of address. A warrant was issued, and Mr. Phillips remained a fugitive until his apprehension in early February 2025.

On February 4, 2025, the Court held an initial appearance regarding revocation of supervised release. (Dkt. # 27.) At this appearance, Mr. Phillips denied all allegations, the government moved for detention, and Mr. Phillips' counsel requested a detention hearing. (Dkt. ## 27-28.)

## II.   DISCUSSION

The threshold issue before the Court is whether it has authority to detain Mr. Phillips pursuant to Fed. R. Crim. P. 32.1 pending his evidentiary hearing on the allegations that he violated the terms of his supervision. As explained below, the Court concludes that Fed. R. Crim. P. 32.1(a)(6), the Judiciary Act of 1789, and 18 U.S.C. § 401 each provide sufficient statutory authority to determine Mr. Phillips' detention status pending adjudication of his supervised release allegations.

Pursuant to 18 U.S.C. § 3143(a)(1): "the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, . . . , be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." This standard is incorporated in Rule 32.1, the rule governing the revocation of supervised

release, and has been affirmed by the Ninth Circuit as applicable to revocation proceedings. *See United States v. Loya*, 23 F.3d 1529, 1531 (9th Cir. 1994) (finding that "if a defendant moves for bail pending his or her revocation hearing, the district court shall determine the person's eligibility for release under the standards of release set forth in 18 U.S.C. § 3143").[1]

In advance of his detention hearing, however, Mr. Phillips submitted a memorandum requesting the Court deny any motion for detention and instead set conditions for his release. (Dkt. # 29.) Mr. Phillips contends that "[c]ontrary to what has been assumed in this district, no statute authorizes this Court to detain Mr. Phillips pending the supervised release violation hearing." (*Id.* at 1.) Invoking the Non-Detention Act, and its interpretation by a district judge in the Second Circuit, *United States v. Mercado*, 2025 WL 297429 (D. Conn. Jan. 24, 2025), Mr. Phillips argues that neither § 3143(a) nor Rule 32.1(a) qualify as Acts of Congress authorizing his detention at this stage of the proceedings. (Dkt. # 29 at 2-4.) He also states that *Loya* is no longer controlling due to changes in Rule 32.1 and the statutory authority required by the Non-Detention Act. (*Id.* at 6.) The government filed a response in opposition. (Dkt. # 30.)

Mr. Phillips' reasoning, that § 3143(a) does not authorize his detention, is premised on his belief that this section only applies to individuals "who have been found guilty" and "are awaiting imposition or execution of sentence." (Dkt. # 29 at 2-3.) He argues that because he has neither been found guilty of a supervised release offense nor is he awaiting a sentence related to the alleged violations, § 3143(a) cannot apply. (*Id.*) He further argues that even if the Court read

---

[1] Every circuit court that has addressed this issue has applied the same standards. *See*, *e.g.*, *United States v. Ruiz-Morales*, 2020 WL 7230764, at *1 (1st Cir. July 23, 2020); *United States v. Grady*, 818 F. App'x 86, 88 (2d Cir. 2020); *United States v. Wroblewski*, 816 F.3d 1021, 1024 (8th Cir. 2016); *United States v. Goode*, 2012 WL 5447975, at *1 (4th Cir. Nov. 8, 2012); *United States v. Lacour*, 2012 WL 1621364, at *1 (5th Cir. May 9, 2012); *United States v. Brigham*, 569 F.3d 220, 229 (5th Cir. 2009); *United States v. Smith*, 500 F.3d 27, 31 & n.3 (1st Cir. 2007); *United States v. Giannetta*, 695 F. Supp. 1254, 1256 (D. Me. 1988).

DETENTION ORDER - 3

§ 3143(a) as referencing his original judgment, for which he is on supervision, then the statute would not apply because he is not awaiting the execution of his original sentence. (*Id.* at 3.) Both arguments are misplaced.

Although courts adjudicate detention pending a revocation hearing for supervised release in accordance with the standards set forth out § 3143, the source of the courts' authority and the basis for applying the standard to revocation proceedings stems from Rule 32.1. *See Loya*, 23 F.3d at 1531; *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988) (noting the Federal Rules hold the same binding authority "as any statute duly enacted by Congress."); *Atchison, Topeka and Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) (quoting *Bank of Nova Scotia*, 487 U.S. at 255). Rule 32.1 merely incorporates the standard the court employs to determine whether to detain or release an individual pending a revocation hearing, it does not attempt to alter the plain language of § 3143(a). For this reason, the Court declines to engage in an analysis of whether Mr. Phillips is technically awaiting execution of his sentence or found to have violated the terms of his supervision.

Mr. Phillips' reliance on the Non-Detention Act of 1971 does not change the analysis. The Act was enacted out of a desire to prohibit unauthorized executive detention.[2] It provides: "No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress."18 U.S.C. § 4001(a). In *Mercado*, the case relied on by Mr. Phillips, the court held that the Non-Detention Act prohibits the detention of citizens absent explicit congressional

---

[2] Congress passed 18 U.S.C. § 4001(a) in 1971 "as part of a bill to repeal the Emergency Detention Act of 1950, 50 U.S.C. § 811 *et seq.*, which provided procedures for executive detention, during times of emergency, of individuals deemed likely to engage in espionage or sabotage." *Hamdi v. Rumsfeld*, 542 U.S. 507, 517 (2004). At the time, Congress was concerned about the possibility that the Act could be used to reprise the Japanese-American internment camps of World War II. *Id.* (discussing legislative posture of the Non-Detention Act).

DETENTION ORDER - 4

authorization. 2025 WL 297429, at *1-*6. The court specifically rejected the government's claim that § 3143(a) served as the necessary "Act of Congress" for detaining an individual after a violation of supervised release for the same reasons Mr. Phillips argues in this case. *Id.* The *Mercado* court noted that for § 3143(a) to grant the requisite authority under the Non-Detention Act, Congress would need to amend it to permit detention pending a supervised release revocation hearing.[3] *Id.* at *6. The *Mercado* court further explained that Rule 32.1 does not correct the deficiency in § 3143(a) because the Federal Rules cannot "abridge, enlarge or modify any substantive right." *Id.* (quoting 28 U.S.C. § 2072(b)).

This Court is not persuaded by the *Mercado* holding for the reasons explained above because, even absent the authority granted by § 3143(a) and Rule 32.1(a), the Court has the inherent power to detain individuals. In *Armstrong v. Guccione*, the Second Circuit addressed the Non-Detention Act, holding that the Judiciary Act of 1789 grants courts sufficient authority to detain individuals to ensure compliance with court orders. 470 F.3d 89, 103 (2d Cir. 2006). The court stated:

> [T]he Non-Detention Act is not an obstacle to Armstrong's detention for the purpose of securing his compliance with the district court's order to produce the corporation's assets. Assuming that the Non-Detention Act has any application to coercive confinement in the face of a finding of civil contempt—a point we need not decide—the Judiciary Act of 1789, which established the lower federal courts, provides sufficient statutory authorization to satisfy any requirement of the Non-Detention Act. The power to confine to coerce compliance with court orders is such a fundamental and well-established incident of judicial power that, in creating the lower federal courts, Congress implicitly vested them with that power. Although it is unnecessary to decide this additional point, we note that there is every reason to think that the requirements of the Non-Detention Act are also satisfied by 18 U.S.C. § 401, which should be understood to authorize imprisonment on findings of both civil and criminal contempt.

---

[3] Since the enactment of the Non-Detention Act over 54 years ago, *Mercado* appears to be the only instance where a court has proposed the novel theory that the Non-Detention Act restricts a court's authority to detain individuals pending a hearing on revocation of supervised release.

DETENTION ORDER - 5

470 F.3d at 102.

The inherent judicial powers of the federal courts allow coercive confinement as a means to enforce orders. *See Armstrong*, 470 F.3d at 103-04 (citing *United States v. Hudson*, 11 U.S. 32, 34 (1812) (stating that inherent powers are "not immediately derived from statute"); *Ex parte Robinson*, 86 U.S. 505, 506-10 (1873) ("The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power.")). As the *Armstrong* court explained, "'[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" 470 F.3d at 103 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). This authority is "as ancient as the laws themselves." 470 F.3d at 104 (quoting William Blackstone, 4 *Commentaries* at *282). Accordingly, "[i]n the event the Non-Detention Act applies to a federal court's power to enforce its orders by confinement, the enactment establishing those courts satisfied its requirement of a statute of Congress." 470 F.3d at 104-05 (citing U.S. Const. art. III, § 1; *and* art. I, § 8, cl. 9 (authorizing Congress to "constitute Tribunals inferior to the supreme Court")).

The Supreme Court has underscored the necessity for a clear indication of legislative intent to negate or repudiate these inherent powers. "Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's authority in equity, the full scope of that authority is to be recognized and applied." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) (internal citation omitted) "In the absence of a clear indication, whether express or implied, the Supreme Court has 'resolve[d] ambiguities [in the statute or rule at issue] in favor of that interpretation which affords a full opportunity for . . . courts to [act] in accordance with their traditional practices.'" *Armstrong*, 470 F.3d at 102–03 (quoting *Hecht Co. v. Bowles*, 321 U.S.

DETENTION ORDER - 6

321, 330 (1944)); *see also Weinberger*, 456 U.S. at 320 (quoting the same passage from *Hecht*). Because the Non-Detention Act does not indicate any Congressional intent to restrict the courts' inherent powers, the courts' ability to enforce orders through detention remains intact.

While the Ninth Circuit has not definitively addressed what constitutes an "Act of Congress" for the purposes of the Non-Detention Act, it has clearly established that Rule 32.1(a)(6) and § 3143(a)(1) collectively authorize detention pending supervised release hearings. *See, e.g.*, *Loya*, 23 F.3d at 1530-31 (the court determines eligibility for release pending further proceedings on supervised release violations under the standards set forth in § 3143); *United States v. Bohol*, 314 F. App'x 86 (9th Cir. 2009) (affirming these authorities and citing *Loya*); *see also United States v. McCurin*, 2020 WL 3866885, at *1 (9th Cir. May 11, 2020) (("Section 3143(a)(1) governs detention pending a supervised release revocation hearing"); *see also United States v. Brewster*, 2023 WL 2375224, at *1 (E.D. Wash. Mar. 6, 2023); *United States v. Goitom*, 2020 WL 4193437, at *2 (W.D. Wash. July 21, 2020); *United States v. Ghidoni*, 2013 WL 6189254, at *3 (N.D. Cal. Nov. 26, 2013); *United States v. Maxwell*, 2008 WL 2474572, at *2 (W.D. Wash. June 6, 2008). Mr. Phillips has not cited any binding Supreme Court or Ninth Circuit authority to the contrary.

In light of these principles, the Court concludes that the Non-Detention Act does not preclude Mr. Phillips's detention pending his revocation hearing. Even if the Non-Detention Act applied to criminal confinement,[4] the Judiciary Act of 1789 provides adequate statutory authority

---

[4] While the Court does not take a position on this issue, there is evidence in the legislative history that Congress did not intend for the Non-Detention Act to restrict a federal court's inherent power to enforce its orders through detention. *See Armstrong*, 470 F.3d at 105 n.2 (citing 117 Cong. Rec. 31,541 (1971)) (statement of Rep. Poff) ("It is not the committee's intent to eliminate any detention practices presently authorized by statute or judicial practice and procedure, . . . Detentions incident to judicial administration such as those authorized by the judicial authority to maintain order in a courtroom, judicial contempt

DETENTION ORDER - 7

to satisfy the Non-Detention Act's requirement that imprisonment occur only pursuant to an Act of Congress. The Court's authority is further reinforced by 18 U.S.C. § 401,[5] which provides:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as -
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
> (2) Misbehavior of any of its officers in their official transactions;
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

§ 401. Mr. Phillips' actions fall within the third category of contempt.

In sum, the Court finds that the Judiciary Act of 1789, § 401, and Rule 32.1(a)(6) provide sufficient statutory authority for ordering Mr. Phillips detained pending his supervised release violation hearing.

---

powers, and the judicial authority to revoke bail or parole, are not within the intendment of the committee's amendment."); *id.* at 32,145 (statement of Sen. Inouye) (explaining that the House bill "should be viewed as in no way granting authority to eliminate any detention practices now authorized by statute, judicial practice or procedure, such as ... judicial authorization to revoke bail or parole, or to detain those so as to maintain order in the courtroom"); *id.* at 31,541 (statement of Rep. Kastenmeier) ("[The amendment] provides that there must be statutory authority for the detention of a citizen by the United States. Existing detention practices are left unaffected. Incarceration for civil and criminal contempt . . . are already covered by statutes")).

[5] *See Armstrong*, 470 F.3d at 108 ("[T]he judicial power to invoke coercive contempt sanctions is statutorily authorized by § 401 and is therefore not barred by the Non Detention Act.")

DETENTION ORDER - 8

### III. CONCLUSION

On February 11, 2025, Mr. Phillips appeared for his detention hearing on allegations of supervised release violations before the undersigned United States Magistrate Judge. Consistent with the foregoing analyses and for reasons stated on the record (dkt. # 31), the Court concludes there is statutory authority for Mr. Phillips' detention.

Dated this <u>13th</u> day of February, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge